UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY D. CONNESS,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br><br>    Defendant. | Case No. 18-cv-07574-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 17, 19 |

On October 15, 2015 Plaintiff Gary Conness applied for a period of disability insurance benefits, alleging disability commencing August 17, 2015. AR 192–95. His application was initially denied on January 8, 2016, AR 120–22, and again upon reconsideration on April 13, 2016, AR 124–26. Mr. Conness then requested a hearing before an administrative law judge ("ALJ"). AR 130–31. The hearing was held before ALJ David LaBarre on December 7, 2017, after which ALJ LaBarre issued a decision finding that Mr. Conness was not disabled from August 17, 2015 through the date of the decision. *See* AR 12 (ALJ decision). On October 15, 2018, the Appeals Council for the Social Security Administration denied Mr. Conness's request for review, thus leaving the ALJ's decision as the final decision of the agency. *See* AR 1–6. Mr. Conness then initiated this action challenging the ALJ's decision.

Mr. Conness has exhausted his administrative remedies with respect to his claim for disability insurance benefits. This Court has jurisdiction to review pursuant to 42 U.S.C. § 405(g). Mr. Conness has moved for summary judgment, seeking a reversal of the ALJ's decision or remand for further administrative proceedings. Docket No. 17 ("Pl. Mot."). The Commissioner has cross-moved for summary judgment. Docket No. 19 ("Def. Mot."). For the reasons discussed

below, the Court **GRANTS** Mr. Conness's motion and **DENIES** the Commissioner's cross-motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When Mr. Conness applied for benefits in October 2015, he claimed that he suffered from, *inter alia*, back problems, knee issues, depression, and severe anxiety and panic attacks. *See* AR 192, 298. As noted above, ALJ LaBarre rejected Mr. Conness's claim for benefits, applying the five-step sequential evaluation process set forth in the governing regulations. *See* AR 16 (citing 20 C.F.R. §§ 404.1520, 416.920). The five steps of the inquiry are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). "The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five." *Id.*

In the instant case, the ALJ made the following rulings regarding the five steps.

At step one, the ALJ agreed that Mr. Conness did not engage in substantial gainful activity since August 17, 2015. *See* AR 17.

At step two, the ALJ determined that Mr. Conness had the following severe impairments: disorders of the back, degenerative; reconstructive surgery of weight bearing joints (knees); Generalized Anxiety Disorder; and Major Depressive Disorder. *See* AR 18.

At step three, the ALJ decided the impairments did not meet or equal the severity of the

listed impairments in the regulations. *See* AR 19 (citing 20 C.F.R. § 404, Subpart P, Appendix 1). The ALJ assessed Mr. Conness as retaining the residual functional capacity ("RFC") to perform the demands of sedentary work, including:

> [F]requently lifting and carrying less than ten pounds, can occasionally lift and carry ten pounds, can sit for up to six hours, but must have the ability to stand for ten minutes for every two hours of sitting. Additionally, the claimant can stand or walk for two hours in an eight-hour workday; the claimant should never climb ladders, ropes, or scaffolds; is able to occasionally climb ramps and stairs, and can occasionally stoop, kneel, balance, crouch and crawl. Further the claimant can never have concentrated exposure to vibrations and hazardous machinery, and may never work around unprotected heights. The claimant can tolerate frequent interaction with coworkers and supervisors and have frequent interaction with the public, and can tolerate frequent changes in work setting. The claimant will be absent from work one day per month due to medical and psychological symptoms.

AR 21.

At step four, the ALJ compared Mr. Conness's RFC to his past relevant work as a manager, food service staff, small business owner, ride operator, and amusement park worker. The ALJ decided that Mr. Conness could no longer perform that kind of work. *See* AR 28.

Finally, at step five, the ALJ determined, based on testimony of a vocational expert who spoke to Mr. Conness's age, education, work experience, and RFC, that Mr. Conness could perform the following jobs: telephone solicitor, table worker, document specialist, and booth cashier. *See* AR 29. The ALJ therefore concluded that Mr. Conness was not disabled from the onset date August 17, 2015 to the date of the decision. *See* AR 31.

**II.     DISCUSSION**

A.     Legal Standard

After a final decision on a claim for benefits by the Commissioner, the claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."). Substantial

evidence is relevant evidence—"more than a scintilla, but less than a preponderance"—that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d. 1028, 1035 (9th Cir. 2007). A court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 495 (9th Cir. 2001). If evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005).

Here, Mr. Conness challenges the ALJ's decision on only one ground. He contends that the ALJ failed to articulate clear and convincing reasons for discounting Mr. Conness's testimony concerning his inability to sit upright for prolonged periods. Pl. Mot. at 6. The ALJ instead concluded that Mr. Conness had the RFC to "sit for up to six hours, but must have the ability to stand for ten minutes for every two hours of sitting." AR 21.

B. <u>Mr. Conness's Testimony</u>

At the hearing, Mr. Conness testified that as a result of his severe impairments, including back and knee pain from previous surgeries, he cannot sit upright for prolonged periods. AR 76. He stated that he spends about 60 percent of the day in a recliner and about 30 percent of the day in bed. AR 63. He also attests that he tried to work at a job that involved sitting for an eight-hour shift but that it was too painful to continue. AR 47. At the time of the hearing, Mr. Conness worked one day a week, on Saturdays, for four to five hours a day during which he alternated between sitting and standing. AR 45. He claimed that he would take all of Sunday and Monday off to recover from the pain of Saturday's work activities, mostly by reclining in a chair. AR 55. At a medical appointment, Mr. Conness stated that he could only sit upright for 20 minutes at a time. AR 713.

C. <u>ALJ's Determination of Mr. Conness's Credibility</u>

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035–36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment

4

'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering," then at the second step the ALJ "may reject the claimant's testimony regarding the severity of [his] symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ here followed the two-step analysis. At step one, the ALJ determined that Mr. Conness's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" of pain. AR 22. At step two, the ALJ found that Mr. Conness's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence." AR 22. The ALJ thus concluded, contrary to Mr. Conness's testimony, that he had the RFC to sit for up to six hours, as long as he was allowed to stand for ten minutes for every two hours of sitting. AR 23.

Mr. Conness does not take issue with the ALJ's finding at the first step, but contends that the ALJ erred at the second step. AR 21–22. The Court agrees. The ALJ gave little or no weight to two of the most significant pieces of medical evidence supporting Mr. Conness's testimony without an adequate explanation. And of the reasons the ALJ identified for discounting Mr. Conness's testimony, several were not clear and convincing.

1. Dr. Yang's Medical Opinion

The first piece of medical evidence supporting Mr. Conness's testimony is the report by Dr. Janet Yang, one of Mr. Conness's treating physicians. Dr. Yang conducted an MRI of Mr. Conness's lumbar spine in December 2016 that showed multilevel lumbar spondylosis, spondylolistheses, and facet arthropathy, and assessed that he was suffering from "[c]hronic back pain due to trauma." AR 703–06. Subsequently, in April 2017, Dr. Yang completed a medical source statement in which she classified Mr. Conness's symptoms and functional limitations as "marked," indicating that they interfere with his ability to complete tasks more than 30 percent of

the day. AR 676. She further found that the maximum amount of time Mr. Conness would be able to sit in an eight-hour work day was "less than two hours" and that Mr. Conness would need to lie down or recline from work activity for five minutes every hour. AR 677.

Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "[T]he opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.* (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198).

Here, the ALJ represented that he gave "little weight" to the opinion of Dr. Yang, a treating physician. AR 25. But he did so without providing specific and legitimate reasons supported by substantial evidence. He first criticized Dr. Yang's medical source statement as "internally inconsistent" because it "noted that there was only some corroboration of the claimant's reporting with the objective medical findings, yet . . . found the claimant to be markedly limited." AR 25. There is no inconsistency. Dr. Yang stated that there was "some corroboration"—not no corroboration—between "the objective/clinical findings, as compared to Mr. Conness's subjective complaints, including the nature, intensity, and frequency of the pain and limitation as he describes." AR 676. And she specifically found that Mr. Conness could sit for "less than two hours" in an eight-hour work day, indicating that even if her medical findings did not wholly corroborate Mr. Conness's complaints, they at a minimum confirmed his description of his limitations when it comes to prolonged sitting. AR 677.

Second, the ALJ found that Dr. Yang's medical finding of multilevel lumbar spondylosis was inconsistent with an evaluation conducted by Dr. Lawrence Chan and Nurse Practitioner Catherine Berg. AR 25. Because Dr. Yang is a treating physician, if her "opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate

6

reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* The ALJ here merely stated, in conclusory fashion, that Dr. Yang's "opinion is not consistent with the [Chan and Berg] evidence indicating mild degenerative changes and minimal levoscoliosis of the claimant's lumbar spine." AR 25 (citing AR 714). He did not elaborate on why he credited the Chan and Berg finding—which did not specifically opine on the limitations Mr. Conness experienced with prolonged sitting—over Dr. Yang's. The ALJ's finding thus falls short of the substantial evidence standard.

Third, the ALJ gave reduced weight to Dr. Yang's medical statement because it was largely in a "fill in the box" format, completed in response to a form sent by Mr. Conness's attorney. AR 25. That is, Dr. Yang denoted her opinions by marking checkboxes on a form listing various medical questions (*e.g.*, marking the "less than 2 hours" checkbox in response to a question about the maximum amount of time Mr. Conness could sit in an eight-hour day). AR 676–77. The Commissioner cites *Hatfield v. Berryhill*, 768 F. App'x 629 (9th Cir. 2019) for the proposition that the ALJ properly "assigned reduced weight" to Dr. Yang's opinion because it was "presented on a checkbox form." *Id.* at 631. However, in *Hatfield*—an unpublished, non-precedential decision—the checkbox form was discounted because "it was inconsistent with other medical evidence in the record and lacked explanation." *Id.* Here, in contrast, Dr. Yang explained that her conclusions in the medical source statement were based on her evaluation of Mr. Conness three months prior, in January 2017. *See* AR 676. That evaluation, in turn, was documented in a six-page medical report that found, based on an MRI and other tests, that Mr. Conness suffered from "[c]hronic back pain due to trauma." AR 706. Thus, Dr. Yang's medical source statement could not simply be dismissed as an opinion that is "brief, conclusory, and inadequately supported by clinical findings," as in *Hatfield*. 768 F. App'x at 631 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

7

The ALJ failed to "provid[e] specific and legitimate reasons that are supported by substantial evidence" for discounting the medical opinion of treating physician Dr. Yang, which directly supported Mr. Conness's testimony about his inability to sit for prolonged periods. *Garrison*, 759 F.3d at 1012.

2. General Functional Capabilities Evaluation

The second piece of medical evidence supporting Mr. Conness's testimony is the "general functional capabilities" evaluation completed by Occupational Therapist Joseph Sinay and Physical Therapist Elizabeth Oberholtzer. The evaluation, based on an examination conducted in April 2017, found that Mr. Conness had a "[m]aximum physical capacity for dynamic lifting" of 15 pounds and that he experienced a "significant increase" in pain after sitting for 26 minutes and 14 seconds. AR 720–21. The evaluation concluded that "[patient] may require an occupation that does not require heavy lifting, carrying, pushing, pulling, prolonged sitting or standing." AR 720.

In making his RFC determination, the ALJ cited to only the first finding in the evaluation—that "claimant is able to perform dynamic lifting of 15 pounds or less"—but made no mention of the finding that prolonged sitting triggered significant pain for Mr. Conness. AR 24. Mr. Conness argues that the ALJ erred in ignoring that finding. Again, the Court agrees. An occupational therapist or physical therapist is considered an "other" medical source. *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996). An ALJ may not reject the competent testimony of "other" medical sources without comment, *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006), but rather must give "reasons germane to each [source] for doing so," *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Here, the ALJ appears to have disregarded without explanation Sinay's and Oberholtzer's finding that Mr. Conness cannot sit for prolonged periods. This is troubling because the ALJ fully credited the other finding in the same evaluation about Mr. Conness's lifting capacity, and determined that it was "consistent with the objective medical evidence, such as imaging of the claimant's lumbar spine, showing chronic lumbar pain and degenerative disc disease and degenerative levoscoliosis." AR 24. The ALJ even quoted Sinay's and Oberholtzer's

8

recommendation that Mr. Conness "may require an occupation that does not require heavy lifting, carrying, pushing, pulling, prolonged sitting or standing," and observed that his RFC determination was faithful to this recommendation because it "does limit the claimant to sedentary work and to lifting no more than 10 pounds." AR 24 (quoting AR 720). Yet the ALJ made no mention of the fact that the same evaluation recommended for Mr. Conness an occupation that does not require "prolonged sitting"—a recommendation that is also consistent with the objective medical evidence of chronic lumbar pain and degenerative disc disease, while being entirely inconsistent with the determination that he could sit for up to six hours in a work day.

Thus, the ALJ failed to give a "germane" justification for selectively crediting Sinay's and Oberholtzer's evaluation, *Molina*, 674 F.3d at 1111, which provided "significant probative evidence" corroborative of Mr. Conness's assertion of a limited capacity for prolonged sitting, *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (holding that an ALJ "must explain why significant probative evidence has been rejected") (citation omitted).

### 3. Other Evidence

The ALJ cited other reasons for discounting the credibility of Mr. Conness's testimony. Some of these reasons—including that Mr. Conness was not taking medication for his back pain at the time of the hearing, and that his treating physicians had recommended conservative treatment for his back rather than surgical intervention—can be fairly understood as being somewhat inconsistent with Mr. Conness's testimony regarding debilitating symptoms. *See* AR 23–25. Others, however, are not "clear and convincing reasons" for rejecting his testimony. *Garrison*, 759 F.3d at 1014–15

For instance, the ALJ notes that "numerous physical exams reveal that the claimant is able to ambulate effectively, . . . and the claimant appears to have maintained normal strength in his lower extremities." AR 23. He further recounts that "[t]he claimant's straight leg raise tests are also repeatedly negative." The ALJ does not explain why Mr. Conness's ability to walk and raise his leg are pertinent to his testimony about the pain he experiences from sitting. Indeed, Mr. Conness's general functional capacities evaluation noted that for him, "Walking is better than sitting or standing." AR 723. Next, the ALJ found that Mr. Conness's characterization of his

9

back pain is "not consistent with the recommendations made by the claimant's treating physicians that the claimant perform exercises and physical therapy in order to help alleviate his back pain." AR 23. It is not clear why the fact that Mr. Conness needs to undergo physical therapy to manage his back pain undermines his testimony that prolonged sitting causes him acute pain. Based on the above "objective medical evidence" concerning Mr. Conness's ability to walk and perform straight leg raises, and his need for physical therapy, the ALJ concluded that "the claimant is able to sit . . . as described in the claimant's residual functional capacity." AR 23. Not only is that evidence lacking in probative value, as discussed above, the ALJ failed to properly consider that there is far more substantial probative medical evidence to the contrary: a treating physician's opinion from Dr. Yang that explicitly opines that Mr. Conness can not sit for more than two hours in a work day, and a general functional capabilities evaluation documenting the significant pain Mr. Conness suffers after sitting for 26 minutes.

The Court therefore finds that the ALJ erred in failing to provide "clear and convincing reasons" for discrediting Mr. Conness's testimony about the severity of his symptoms. *Garrison*, 759 F.3d at 1014–15. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). That is because "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the testimony as true." *Treichler*, 775 F.3d at 1106. Here, Mr. Conness requests remand for proper consideration of his testimony regarding his inability to sit for prolonged periods, Pl. Mot. at 13, and such remand is appropriate. *See, e.g.*, *Doto v. Berryhill*, No. 17-CV-01120-VKD, 2018 WL 4680212, at *24 (N.D. Cal. Sept. 28, 2018) (remanding for redetermination of claimant's RFC and ability to work where ALJ provided insufficient reasons for discounting claimant's reports of her symptoms).

///

///

///

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Mr. Conness's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case for further administrative proceedings consistent with this Order. The Clerk is instructed to enter judgment in favor of Plaintiff.

This order disposes of Docket Nos. 17 and 19.

**IT IS SO ORDERED**.

Dated: July 30, 2019

_____
EDWARD M. CHEN
United States District Judge